Justice Rice, concurring in part and dissenting in part.
¶50 I agree with the Court's well-articulated substantive analysis, but I partially disagree with the Court's application of the governing principles, and in the final result. We remanded in Krakauer I for the District Court to consider these principles, and, procedurally, to conduct an in camera review of the contested records. I would reverse in part and affirm in part the District Court's holding, and order a release of limited information in response to the Petitioner's request.
¶51 I believe the Court correctly concludes that Doe has a privacy interest in his educational records that society would recognize as reasonable, and thus I concur with the Court's reversal of the District Court's contrary conclusion. I further agree that Doe's privacy right has been enhanced under state and federal law, beyond a "general privacy interest[ ]," which is "an important factor to consider" in the constitutional balancing analysis. Opinion, ¶ 16. Indeed, protection of Doe's privacy interest was the reason we ordered an in camera review. Krakauer I , ¶ 39 ("We have recognized the efficacy of an in camera review of requested records by a district court to ensure that privacy interests are protected. ... On remand, the District Court should review the requested documents in camera , and in the event it determines to release any document after conducting the balancing test, every ***268 precaution should be taken to protect the personal information about other persons contained in the documents.").
¶52 The Court recognizes that FERPA provides students with notice that the privacy of their educational records is subject to exceptions that permit disclosure in limited circumstances, including through the judicial process. Similarly, the Student Conduct Code advises students that their records may be subject to disclosure in compliance with state and federal law, including release by judicial *215 order. I thus disagree with the Court's conclusion that Doe did not have notice that his educational records were subject to disclosure in circumstances such as those here. Opinion, ¶¶ 19-21.
¶53 Balanced against the privacy interest, "there is a constitutional presumption that all documents of every kind in the hands of public officials are amenable to inspection, regardless of legislation, special exceptions made to accommodate the exercise of constitutional police power, and other competing constitutional interests, such as due process." Great Falls Tribune v. Mont. PSC , 2003 MT 359, ¶ 54, 319 Mont. 38, 82 P.3d 876 (emphasis in original) (citations omitted). Thus, going into the balancing test, the public's right to know is to be weighted with a presumption favoring release.
¶54 The reasoning of the U.S. District Court in Doe v. University of Montana is worth noting:
[L]ost in all of this is the valid and compelling interest of the people in knowing what the University of Montana is up to. It has been established that the prevalent and long-standing approach of the federal courts is to reject secret proceedings. There are very few exceptions to this rule. The principle of openness in the conduct of the business of public institutions is all the more important here, where the subject matter of the litigation is a challenge to the administrative disciplinary process of a state university.
Doe v. Univ. of Mont. , No. CV 12-77-M-DLC, 2012 WL 2416481, at *4, 2012 U.S. Dist. LEXIS 88519, at *11 (D. Mont. June 26, 2012). I agree, and believe the people of the state simply must be able to learn about and know-in some degree-a decision made by the Commissioner of Higher Education about a University matter, including a matter involving a student. This itself is an important fact: at issue is not a personnel matter before a human resource officer in a small unit of government, but, rather, a contested case before a high official in the state government, exercising statewide authority. As noted by the U.S. District Court, people must be able to learn what their institutions are "up to," and that the government is not engaged in inappropriate conduct. Did the ***269 Commissioner make a decision on appropriate legal grounds? Did he exhibit favoritism? Was he subject to outside influence? Doe's enhanced privacy right must be weighed and balanced against the vital, democratic function of the public's right to know these answers. "[T]ransparency is crucial to the legitimacy of a public institution." Doe v. Univ. of Mont. , 2012 WL 2416481, at *4, 2012 U.S. Dist. LEXIS 88519, at *11.
¶55 Troubling to me about the outcome here is that it reaches an all-or-nothing result, largely turning upon the wording of Krakauer's request for the records. The Court recognizes that a nonspecific request for general information that did not name Doe would have rendered redaction a viable option, and the Commissioner "could have responded by supplying the appropriate records with each student's personally identifying information redacted[.]" Opinion, ¶ 35. But the Court concludes that the wording of the request sinks the request entirely, and no records whatsoever can be released. In light of the critical importance of the right to know, I believe that conclusion is error.
¶56 While we tend to think of the issue as a yes-or-no, all-or-nothing decision, I don't believe the balancing test must lead to that result, either here or in other cases. While it is true that the request here may have made redactions about Doe futile, the request should nonetheless be honored to the extent it can be-that is, with a limited release of information that discloses the decision the Commissioner made and the grounds upon which he made it. Review of the record convinces me that the public's right to know the basis for the Commissioner's decision outweighs even the enhanced right to privacy in this case. The Commissioner's decision makes clear that it is premised on matters of process in the University's handling of the matter, and includes very little discussion of the underlying facts. Redactions may be viable within that document to ensure protection of any private information, such as information provided by or about, or the identity of, other parties, or of the nature of specific evidence. I would remand for the District *216 Court to further consider any appropriate redactions.
¶57 Such a result is consistent with the process under FERPA. As we noted in Krakauer I , FERPA authorizes the limited release of information about the final results of a student disciplinary proceeding for certain crimes if the student is found to have committed a violation. Krakauer I , ¶ 26. FERPA additionally authorizes release of information in compliance with a judicial order. Indeed, the cases cited by the Court lend authority for such limited, student-specific releases of documentation. Opinion, ¶ 45.
¶58 The Court emphasizes that it does not foreclose the release of student records in future cases, and that it will "depend on the facts of ***270 each case." Opinion, ¶ 44. I agree with the necessity of case-by-case review, but I would hold that, under the facts of this case, a limited release of information is required to satisfy the constitutional right to know, and is authorized under FERPA as necessary in response to a court order. I would thus reverse in part the order of the District Court and order a more limited release of information setting forth the Commissioner's decision and the grounds on which he made it.
Chief Justice Mike McGrath and Justice Beth Baker join in the concurring and dissenting Opinion of Justice Rice.